NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____

JOSEPH HUBBARD,            :

              :

        Plaintiff,      :

              :        Civil No. 18-16090 (RBK/KMW)

          v.        :

              :        **OPINION**

COMCAST CORPORATION,    :

COMCAST CABLE           :

COMMUNICATIONS MANAGEMENT, :

LLC                 :

              :

        Defendants.   :

_____

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion to Compel Arbitration and Stay Proceedings (Doc. No. 22) and the Motion for Leave to File Supplemental Authority (Doc. No. 25) filed by Defendants Comcast Corporation and Comcast Cable Communications Management, LLC (collectively, "Comcast"). For the reasons that follow, Defendants' Motion to Compel Arbitration is **GRANTED** and their Motion for Leave to File Supplemental Authority is **DENIED** as moot.

I.    **BACKGROUND**

    **A. Factual Background**

On January 16, 2014, Plaintiff signed an offer letter for an Account Executive position with Comcast. (Doc. No. 22-1 ("Def. SUMF") at ¶ 1). The offer letter's second page contained the following language:

> Comcast has a dispute resolution program for its employees, known as Comcast Solutions, which provides a three-step process (facilitation, mediation, and binding

arbitration) for resolving a variety of workplace legal issues should there be any that arise between you and the Company during or after your employment. A brochure with information and directions on how to obtain additional information related to the program is being provided to you along with this offer letter. Please review this information carefully, as the program affects the legal rights of both you and the Company (including a waiver of the right to bring a civil action in federal or state court or before a civil judge or jury, as well as a waiver of the right to bring or participate in a class action, collective action or representative action). If you cannot locate the brochure, have any questions or need additional information regarding Comcast Solutions, please call, toll free, 855-838-4180, or email to Comcast_Solutions@cable.comcast.com. By accepting this offer of employment with the Company and signing below, you acknowledge that you understand the terms of the Comcast Solutions Program and also acknowledge that both you and the Company agree to participate in and be bound by the terms of the Comcast Solutions Program.

(Doc. No. 22-4 at 6). Before signing, Plaintiff read through the entirety of the offer letter, including the provision set forth above, but was not overly concerned. (Def. SUMF at ¶¶ 7–8).

The first page of the document Comcast identifies as "the brochure" reads "Comcast Solutions, A channel for effectively resolving workplace legal issues." (Doc. No. 22-4 at 9). While the Court will refer to this document as "the brochure," the document itself never refers to itself as "the brochure."

The brochure provides more detail on the Comcast Solutions Program. Specifically, the brochure explains that "Comcast Solutions is designed to address . . . claims for discrimination based on race, gender, age, religion, disability or any other protected class." (Doc. No. 22-4 at 11). Under the program, a "Comcast Solutions Lead" attempts to resolve employee grievances internally through a process called "review/facilitation." (Doc. No. 22-4 at 15). If the grievance is not resolved internally, the employee may request mediation; if the employee is not satisfied with the mediation result, he can proceed to binding arbitration before an arbitrator approved by either the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services ("JAMS"). (*Id.*).

2

Page eight of the brochure, titled "Important information about Comcast Solutions," states that "[b]y accepting employment with Comcast, you are agreeing that you and the company will be bound by the Comcast Solutions Program for covered legal claims." (Doc. No. 22-4 at 17). In a grey box partway down the page, the brochure further states that

> **To participate in the Comcast Solutions Program, both you and the company waive the right to a civil action or a jury trial for any covered claims. You also waive the right to bring or participate in a class action or in a collective or representative action on covered legal claims, to the fullest extent permitted by law. <u>All</u> covered legal claims will be handled through the three-step Comcast Solutions process; both you and the company will be bound by the final decision of the arbitrator.**

(*Id.*). The brochure directs its readers to consult the "Comcast Solutions Guide, DRO rules and FAQs to ensure you fully understand the Comcast Solutions Program prior to accepting employment with the company." (*Id.*).

Pages nine and ten of the brochure contain a section entitled "FAQ." (*Id.* at 18–19). This section reiterates that "[b]y participating in Comcast Solutions . . . both you and the company are waiving the right to have covered legal claims heard by a judge or jury in a court of law or equity." (*Id.* at 18). The FAQ section further provides that New Jersey employees will use JAMS arbitrators. (*Id.* at 19).

The Comcast Solutions Program Guide (Doc. No. 22-4 at 22–29) offers still more detail on the nature of the Comcast Solutions Program. The Guide states that "[n]o Covered Claims between the Participating Employee and the Company may be brought, pursued, or litigated, by either the Company or the Participating Employee, in a federal, state, or local court of law or equity." (*Id.* at 23). The Guide also contains a section discussing the rights waived by Comcast and the participating employees, which states that "[a]ny issue concerning arbitrability of a particular issue or claim pursuant to the arbitration agreement (except for those concerning the

3

validity or enforceability of the Waiver) shall be resolved by the arbitrator, not the court." (*Id.* at 29).

Plaintiff cannot recall if he ever received the brochure and denies ever receiving the Program Guide or the FAQs document. (Doc. No. 23-4 at 88, 90). Plaintiff did not contact Comcast to attempt to procure the brochure or to ask any questions about the Comcast Solutions Program. (*Id.* at 46–50).

In December 2015, Comcast modified the terms of the Comcast Solutions Program. (Doc. No. 22-4 at 37–38). While Comcast announced the change to the program by publishing an update on the company's intranet site, ComcastNow, that certain terms of the Comcast Solutions Program Guide were being altered, Comcast did not send any sort of communication, such as an email, directly to its employees. (Doc. No. 23-3 at 42). The update on ComcastNow was published on December 8, 2015, and notified employees that if they had any questions about the changes to Comcast Solutions or if they wished to remain under the prior terms of the program, they should contact a member of the Comcast Solutions Team by December 30, 2015. (Doc. No. 22-4 at 37–38). Plaintiff asserts that he never saw this update and denies any knowledge of Comcast's intranet site, and accordingly admits that he took no steps to object to the 2015 modification. (Doc. No. 23-4 at 76–77, 86).

From 2014 to 2017, Plaintiff electronically submitted forms acknowledging Comcast's code of conduct and employee handbook. (Def. SUMF at ¶ 27). While the 2014 and 2015 acknowledgement forms make no explicit mention of Comcast Solutions, the 2016 and 2017 forms state that:

> I acknowledge that I have read and I understand the Code of Conduct and the Employee Handbook (and all related content including the Comcast Solutions Program Policy).

. . . .

I understand that the Comcast Solutions Program is a mutually-binding contract between me and Comcast and that my continued employment with Comcast is confirmation that I am bound by the terms of the Comcast Solutions Program. Further, information about the Comcast Solutions Program—including the Program Guide, Frequently Asked Questions, and various Program forms (including the initial Filing form)—is available for me to review on ComcastNow.

. . . .

I understand that if I click "I do not acknowledge" and disclose an exception below, I am still obligated to abide by all rules policies, and standards set forth in the Code of Conduct and Employee Handbook (and all related policies) and am still bound by the Comcast Solutions Policy.

(Doc. No. 22-4 at 44–47). Plaintiff clicked "I acknowledge" on all of these forms. (*Id.* at 41, 43, 45, 47).

## B. Procedural History

On November 13, 2018, Plaintiff brought this employment discrimination lawsuit against Defendants for violations of the Age Discrimination in Employment Act ("ADEA") and the New Jersey Law Against Discrimination ("NJLAD"). On January 18, 2019, Defendants filed their initial Motion to Compel Arbitration and Stay Proceedings. (Doc. No. 5). On July 3, 2019, the Court denied this Motion without prejudice and gave Defendants leave to file a renewed motion to compel arbitration after limited discovery. (Doc. Nos. 10, 11).

On January 10, 2020, Defendants filed the instant Motion to Compel Arbitration and Stay Proceedings. On January 21, 2020, Plaintiff filed a response in opposition to Defendants' Motion. (Doc. No. 23 ("Pl. Brief")). On January 27, 2020, Defendants filed their reply brief. (Doc. No. 24).[1] The Motion is now ripe for decision.

---

[1] On May 19, 2020, Defendants filed their Motion for Leave to File Supplemental Authority, seeking to file the recently issued Third Circuit opinion in *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 600 (3d Cir. 2020). While *Bacon* is binding precedent on issues relevant to this case, because the Court is deciding the underlying Motion to Compel Arbitration, the Motion for Leave to File Supplemental Authority will be denied as moot.

II.     **LEGAL STANDARD**

    **A.  Federal Arbitration Act**

The Federal Arbitration Act ("FAA") allows federal courts to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Under the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to enforce an arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Courts will not entertain a challenge to the "validity of the contract as a whole, as opposed to the arbitration clause in particular, [because such challenge] does not present a question of arbitrability." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 180 n.4 (3d Cir. 2010) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)). The Court views challenges to the contract as a whole separately from those aimed at the arbitration contract because agreements to arbitrate are severable from a larger contract, and therefore may be separately enforced and their validity determined. *See Rent-A-Center v. Jackson*, 561 U.S. 63 (2010). Thus, "to qualify as a question of arbitrability that the Court may consider, the challenge must 'relat[e] to the making and performance of the agreement to arbitrate.'" *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 229 (3d Cir. 2012) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 338 U.S. 395, 404 (1967)).

The Third Circuit distinguishes between contracts that are asserted to be "void" or non-existent, and those that are merely voidable for the purposes of evaluating whether the making of an arbitration agreement is in dispute. *See Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d.

Cir. 2000). Said another way, a court will not refer a matter to arbitration "without a definitive conclusion on the issue whether an agreement to arbitrate actually existed." *Id.* at 111. "[T]he FAA mandates enforcement of arbitration provisions in all but two circumstances: (1) when a party alleges that the contract as a whole is void ab initio for any reason, or (2) when a party alleges that the arbitration clause itself is void for reasons related specifically to the arbitration clause." *Shri Lakshmi Cotsyn Ltd. v. HN Int'l Grp.*, No. 12-0164, 2013 WL 1222718 at \*3 (D.N.J. Mar. 25, 2013) (internal quotation omitted).

### B.  Motion to Compel Arbitration

On a motion to compel arbitration, the Court must inquire: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also* 9 U.S.C. § 4. "'[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Hejamadi v. Midland Funding, LLC*, No. 18-13203, 2019 WL 4855624, at \*2 (D.N.J. Oct. 2, 2019) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

"Whether a district court considers a motion to compel arbitration under a Federal Rule of Civil Procedure 12(b)(6) standard or a summary judgment standard depends on whether the Complaint sets forth the basis for arbitration." *Seme v. Gibbons, P.C.*, No. 19-857, 2019 WL 2615751, at \*2 (E.D. Pa. June 26, 2019). If the face of the complaint and any documents relied on in the complaint clearly show that a party's claim is subject to an enforceable arbitration clause, the Court will use a "Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers*

*Debt Resolution, L.L.C.*, 716 F.3d 764, 777 (3d Cir. 2013) (internal citation omitted). The motion to dismiss standard is inappropriate, however, where "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate." *Id.* at 774 (internal quotation omitted). In this situation, courts must "'use the summary judgment standard under Rule 56(a), in which the motion [to compel] should be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Seme*, 2019 WL 2615751 at *2 (quoting *Maddy v. Gen. Elec. Co.*, 629 F. App'x 437, 440 (3d Cir. 2015)). As discussed in the Court's prior opinion, Plaintiff's Complaint does not have the necessary clarity to establish that the parties agreed to arbitrate, making the Rule 56 standard appropriate. *Hubbard v. Comcast Corp.*, No. 18-16090, 2019 WL 2866067, at *2 (D.N.J. July 3, 2019).

Under Rule 56, an issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968))). The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. *Id.* at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586. Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.   DISCUSSION

Plaintiff advances two arguments as to why the Court should not compel arbitration: (1) that he did not assent to any valid or enforceable arbitration agreement, and (2) that if he did assent to a valid arbitration agreement, such agreement is unconscionable. (Pl. Brief at 13–31). The Court examines each argument in turn.

### A.  A Valid Arbitration Agreement Exists

"To determine whether a valid arbitration agreement exists, we apply 'ordinary state-law principles that govern the formation of contracts.'" *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Under New Jersey law, an agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law." *James*, 852 F.3d 265. (internal quotation omitted). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." *Id.* (internal quotation omitted). "Because arbitration involves a waiver of the right to pursue a case in a judicial forum, courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." *Id.* (internal quotation omitted).

"Under New Jersey law, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Crawford v. Compass Grp. USA*, No. 14-2545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015) (internal quotation omitted). For arbitration agreements to be enforceable, they must contain "clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief." *Atalese v. U.S. Legal Servs. Grp.*, L.P., 99 A.3d 306, 315–16 (N.J. 2014).

Defendants claim there are at least three ways to find that Plaintiff entered into an enforceable arbitration agreement. First, Defendants contend that the offer letter itself contains the necessary terms. Second, Defendants assert that the offer letter properly incorporated the brochure by reference, that the brochure properly incorporated the Program Guide by reference, and that these documents contain the necessary terms. And third, Defendants argue that the 2016 and 2017 acknowledgement forms properly incorporated the Program Guide by reference.

The Court has some doubts as to whether the offer letter can stand by itself as an enforceable arbitration agreement. While the offer letter does reference the possibility of binding arbitration and specifies that the terms of Comcast Solutions include a waiver of the right to go to court, it fails to explicitly explain that the parties will go to binding arbitration rather than to court, and is therefore perhaps insufficiently "clear and unambiguous." *See Atalese*, 99 A.3d at 314 (finding arbitration agreement unenforceable because "does not explain what arbitration is, nor does it indicate how arbitration is different from a proceeding in a court of law").

Similarly, the Court finds Defendants' argument that the offer letter incorporated the brochure by reference lacking. In New Jersey, "[f]or there to be a proper and enforceable incorporation by reference of a separate document, (1) the separate document must be described in such terms that its identity may be ascertained beyond doubt and (2) the party to be bound by

10

the terms must have had knowledge of and assented to the incorporated terms." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 600 (3d Cir. 2020) (internal quotation omitted). In this case, the document Defendants put forward as "the brochure" is not actually labelled as "the brochure," and indeed does not contain the term "brochure" anywhere in its contents. (Doc. No. 22-4 at 9–20). Consequently, even if Plaintiff received the brochure, it is unclear if "its identity could be ascertained beyond all doubt." *See Bacon*, 959 F.3d at 600–601 (finding that arbitration terms contained in document labeled "Rental Terms & Conditions" were not validly incorporated by reference into agreement that referred to this document as the "rental jacket"). And of course, because only the brochure referred to the Program Guide, the offer letter did not incorporate the Program Guide by reference either. Thus, it seems unlikely that Plaintiff was bound by the Comcast Solutions terms when he signed the offer letter in January 2014.

Nevertheless, the Court finds that Plaintiff did assent to arbitration when he completed the 2016 and 2017 Acknowledgement forms. The forms clearly identify the Program Guide as containing the terms of Comcast Solutions, and the Program Guide's language is sufficiently clear and unambiguous to create a binding arbitration agreement. (Doc. No. 22-4 at 44–47). Further, the forms specify that the Program Guide is available for review on the ComcastNow intranet site, and state that the employee has read and understood the terms of all of these documents. (*Id.*). Therefore, the Program Guide was properly incorporated by reference.

While Plaintiff now denies any knowledge of the Program Guide and the ComcastNow intranet site, "[a] mere claim of lack of awareness of the contents of a signed agreement is not sufficient to invalidate it." *Williams v. Washington Mut. Bank*, No. 07-5559, 2008 WL 5427805, at *3 (D.N.J. Dec. 30, 2008) (citing *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir.2008) ("[E]very contracting party has the duty to learn and know the contents of the contract

before he [or she] signs and delivers it.")). By clicking "I acknowledge" in both 2016 and 2017, Plaintiff adequately manifested his assent to be bound by the terms of the Comcast Solutions program. *See Robbins v. Comcast Cable Mgmt., LLC*, No. 19-5603, 2019 WL 4139297, at *3 (W.D. Wash. Aug. 30, 2019) (finding that Comcast employee validly assented to the terms of Comcast Solutions by clicking "I acknowledge" on the 2017 form).

### B.  The Arbitration Agreement is Not Unconscionable Under New Jersey Law

The FAA permits courts to refuse enforcement of an arbitration agreement to the extent "such grounds . . . exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Generally recognized contract defenses, such as duress, fraud, and unconscionability, can justify judicial refusal to enforce an arbitration agreement." *Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006). Federal courts "generally apply state contract principles to determine whether an arbitration agreement is unconscionable." *Quilloin*, 673 F.3d at 230 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011)). "However, the FAA preempts conflicting state rules that either prohibit arbitration outright, or that stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal quotation omitted).

"The unconscionability determination requires evaluation of both procedure and substance." *Rodriguez v. Raymours Furniture Co.*, 138 A.3d 528, 541 (N.J. 2016). New Jersey courts  apply "a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." *Delta Funding*, 912 A.2d at 111. Here, Plaintiff asserts that the Comcast Solutions Program is both procedurally and substantively unconscionable. (Pl. Brief at 19).

### C.  The Arbitration Agreement is Procedurally Unconscionable

Plaintiff contends that the Acknowledgement Forms are procedurally unconscionable because they are contracts of adhesion. (Pl. Brief at 20.) The essential nature of a contract of adhesion is that "it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the adhering party to negotiate except perhaps on a few particulars." *Moore v. Woman To Woman Obstetrics & Gynecology, L.L.C.*, 3 A.3d 535, 540 (N.J. Super. Ct. App. Div. 2010). In this case, the Acknowledge Forms were standardized forms that gave Plaintiff no choice but to accede to their terms, as they stated that whether he clicked "I acknowledge" or "I do not acknowledge," he would remain bound by the terms of Comcast Solutions. Consequently, the only way Plaintiff could have avoided the terms of Comcast Solutions was by quitting his job; such a contract is plainly a contract of adhesion.

While "contracts of adhesion necessarily involve indicia of procedural unconscionability," this determination does not end the analysis. *Delta Funding Corp.*, 912 A.2d at 111. Rather, courts must consider four additional factors when determining whether to enforce a contract of adhesion: "(1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract." *Id.* (internal quotation omitted). These "factors focus on procedural and substantive aspects of the contract to determine whether the contract is so oppressive, or inconsistent with the vindication of public policy, that it would be unconscionable to permit its enforcement.[2] *Rodriguez*, 138 A.3d at 542 (internal quotation omitted).

---

[2] The Court notes that while the New Jersey Supreme Court has stressed that these factors encompass both the procedural unconscionability and substantive unconscionability analyses, federal courts in this District have asserted that these factors only apply to the procedural unconscionability analysis. *See Montgomery v. Bristol-Meyers Squibb Co.*, No. 19-19948, 2020 WL 3169373, at *4 (D.N.J. June 15, 2020) (stating that "[i]f a plaintiff cannot adequately show that a contract of adhesion was unfairly signed under these additional factors, he or she fails to prove procedural unconscionability" (citing *Uddin v. Sears, Roebuck & Co.*, No. 13-6504, 2014 WL 1310292, at *7 (D.N.J. Mar. 31, 2014)). While this Court elects to follow the New Jersey Supreme Court, this issue is not dispositive in this case.

13

Of these four factors, factors two and three go towards procedural unconscionability while factors one and four go towards substantive unconscionability. Because Plaintiff was forced to accept the terms of Comcast Solutions or quit his job, the Court is willing to assume that he has made a strong showing of procedural unconscionability. *See Robbins*, 2019 WL 4139297, at *6 (finding that employee's agreement to the terms of Comcast Solutions via the 2017 Acknowledgement Form was procedurally unconscionable under Washington law). *But see Montgomery*, *v. Bristol-Myers Squibb Co.*, No. 19-19948, 2020 WL 3169373, at *6 (D.N.J. June 15, 2020) (noting that New Jersey courts have enforced arbitration agreements signed "under heightened financial stress"). Nevertheless, Plaintiff is unable to show that the terms of Comcast Solutions are substantively unconscionable.

### D.  The Arbitration Agreement is Not Substantively Unconscionable

A contract term may be found substantively unconscionable if it is "excessively disproportionate" and involves an "exchange of obligations so one-sided as to shock the court's conscience." *Argabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 481 (D.N.J. 2017) (internal quotation omitted). "An arbitration agreement cannot be construed as substantively unconscionable where it does not alter or limit the rights and remedies available to a party in the arbitral forum." *Montgomery*, 2020 WL 3169373, at *7 (quoting *Quilloin*, 673 F.3d at 230) (internal quotation marks omitted).

Plaintiff first argues that the Comcast Solutions Program is substantively unconscionable because it unreasonably favors Defendants by excessively limiting discovery that Plaintiff would otherwise be entitled to in court. (Pl. Brief at 23). Specifically, Plaintiff claims that Comcast Solutions restricts his ability to fully present evidence at arbitration by (1) limiting the arbitration hearing to just two eight-hour days, (2) limiting the number of depositions to four, (3) limiting the

number of interrogatories to twenty, and (4) limiting the number of requests for production to fifteen. (*Id.* at 23–24; Doc. No. 22-4 at 27).

The Supreme Court has held that limitations on discovery do not necessarily render an arbitration provision invalid. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). In particular, discovery limitations are not substantively unconscionable where the arbitrator has discretion to grant additional discovery and hearing time. *See, e.g.*, *Garcia v. Comcast Cable Commc'ns Mgmt. LLC*, No. 16-02975, 2017 WL 1210044, at *3 (N.D. Cal. Mar. 31, 2017) (holding that reasonable procedural limits are valid in arbitration proceedings, particularly when employees can request additional discovery as needed). Such is the case here.[3] (Doc. No. 22-4 at 27).

Plaintiff also argues that the Comcast Solutions program is substantively unconscionable because it mandates submission of Plaintiff's statutory claims to an inherently unfair and biased arbitral forum. (Pl. Brief 26). This argument has been squarely rejected by the Supreme Court. *See Gilmer*, 500 U.S. at 30 (rejecting the notion that arbitration is inherently unfair and noting that the FAA guards against bias by permitting courts to vacate arbitration awards "'[w]here there was evident partiality or corruption in the arbitrators'" (quoting 9 U.S.C. § 10(b)). Indeed, plaintiff's argument is little more than a facial attack on the policy decision made by both the federal government and the state of New Jersey to favor arbitration. *See Atalese*, 99 A.3d at 311–12 (noting that both the FAA and the New Jersey Arbitration Act, N.J.S.A. 2A:23B–1, *et seq.*, embody "policies favoring arbitration"). While Plaintiff points to substantial evidence that calls into question the wisdom of this policy, it is not the province of this Court to rewrite statutes. Because

---

[3] Plaintiff principally relies on *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538 (E.D. Pa. 2006). In that case, the arbitration agreement only permitted the plaintiff to depose the defendant's expert witness, even though only employees of the defendant had knowledge of how the plaintiff was injured (the plaintiff suffered from memory loss and dementia). *Id.* at 545. Apparently, there was no provision for expanded discovery. Based on these facts, the court found that plaintiff would be at "a distinct disadvantage of arbitration," and thus found the arbitration agreement unenforceable. (*Id.* at 546–47). The facts of *Ostroff* are more extreme on many fronts than the facts in this case, and consequently the Court chooses not to follow that decision.

15

Plaintiff is unable to make any showing of substantive unconscionability, he is bound by the terms of Comcast Solutions.

### E.  Scope of the Arbitration Agreement

Having decided that the arbitration agreement here is valid, the Court must ensure that Plaintiff's claims fall within its scope. The scope of the Comcast Solutions Program is broad. It provides that "[a]ny issue concerning arbitrability of a particular issue or claim pursuant to the arbitration agreement (except for those concerning the validity or enforceability of the Waiver) shall be resolved by the arbitrator, not the court." (Doc. No. 22-4 at 29).  Plaintiff does not dispute that his claims fall within the scope of the Arbitration Agreement.

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion is **GRANTED** and proceedings in this case are **STAYED** pending the results of arbitration; Defendants' Motion for Leave to File Supplemental Authority is **DENIED** as moot. An Order follows.


Dated: 7/21/2020                                                   /s/ Robert B. Kugler
                                                                              ROBERT B. KUGLER
                                                                              United States District Judge